TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00742-CV






Wendy K. Barrigan, Appellant


v.


MHMR Services for the Concho Valley, Self Insured, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT

NO. C-05-0161-C, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 This is an appeal from a jury verdict in a workers' compensation case to determine
the appropriate impairment rating governing appellant Wendy Barrigan's claim for benefits. In six
issues Barrigan challenges the trial court's denial of her plea to the jurisdiction, the trial court's
instructions to the jury on burden of proof, the admissibility of expert testimony offered at trial, and
the legal and factual sufficiency of evidence. For the reasons discussed below, we affirm the
judgment of the trial court.


FACTS AND PROCEDURAL BACKGROUND


 Barrigan was employed by appellee MHMR Services of the Concho Valley
and suffered a back injury when she lost control of a buffer machine while working as part of a
cleaning crew. As a result of her injury, Barrigan underwent a two-level spinal fusion surgery. On
November 18, 2003, Dr. Mark Sanders, an orthopedic surgeon and designated doctor appointed by
the Texas Workers' Compensation Commission, (1) examined Barrigan and determined that she had
reached maximum medical improvement (MMI). Dr. Sanders also determined that Barrigan's
impairment rating was 20%. Dr. Sanders based his assignment of Barrigan's impairment rating on
two advisory opinions issued by the Commission--Commission Advisory Opinions 2003-10 and
2003-10b. (2) In relevant part, Commission advisory 2003-10 provides:


 2. Clarification of Rating for Spinal Fusion(s).


 For spinal fusion, the impairment rating is determined by the preoperative x-ray tests
for "motion segment integrity" (page 102, 4th Edition of the Guides to the Evaluation
of Permanent Impairment). If preoperative x-rays were not performed, the rating
may be determined using the following criteria:



 a. One level uncomplicated fusion meets the criteria for DRE Category II,[ (3)]
Structural Inclusions. This spinal abnormality is equivalent to a healed "less
than 25% Compression Fracture of one vertebral body".


 b. Multilevel fusion meets the criteria for DRE Category IV, Structural
Inclusions, as this multilevel fusion is equivalent to "multilevel spine
segment structural compromise" per DRE IV.


* * *



 4. In the Texas workers' compensation system, the injured employee's
impairment rating is based on the employee's condition on the date of
maximum medical improvement or the date of statutory maximum medical
improvement, whichever is earlier.


Commission advisory 2003-10b is identical to 2003-10 with the following addition:


 c. Health care providers may utilize the range-of-motion or other methodology
if indicated (as with any condition in the 4th Edition Guides) that most
accurately reflects the impairment rating evident for each injured worker.


 After receiving Dr. Sanders's impairment rating, MHMR asked for clarification
based on Dr. Sanders's use of the advisory opinions to assess Barrigan's impairment rating. In
response, Dr. Sanders re-evaluated Barrigan on June 8, 2004, and performed range-of-motion
testing to determine the appropriate impairment rating. Range-of-motion testing is an alternative
method of testing, which can be used as allowed in the fourth edition of the Guides to the Evaluation
of Permanent Impairment, (4) when there is a dispute as to the category of impairment to assign a
patient. The range-of-motion testing performed by Dr. Sanders showed Barrigan to have a 27%
impairment rating. Based on the range-of-motion testing, Dr. Sanders reaffirmed his original
impairment rating of 20%.

 MHMR then requested that Barrigan submit to a "required medical examination" by
another physician to obtain an alternate impairment rating. See Tex. Lab. Code Ann. § 408.004(a)
(West 2006). As part of its RME request, MHMR asked the examining doctor to disregard the
Commission's 2003 advisory opinions. The Commission appointed Dr. Paul Foxcroft to re-evaluate
Barrigan on behalf of MHMR.

 On August 5, 2004, Dr. Foxcroft examined Barrigan and determined that Barrigan's
impairment rating was 10%. Dr. Foxcroft did not criticize Dr. Sanders's evaluations of Barrigan and
independently verified the range-of-motion testing performed by Dr. Sanders. Dr. Foxcroft agreed
with Dr. Sanders that Barrigan had reached MMI in November 2003. Nevertheless, Dr. Foxcroft
dismissed the range-of-motion testing as unnecessary and opined that Dr. Sanders's use of the
Commission advisory opinions was in direct contravention of the Guides, which Dr. Foxcroft
understood to be the law in Texas.

 In light of Dr. Foxcroft's opinion, MHMR challenged Barrigan's impairment rating
as assigned by Dr. Sanders. A benefit review conference was held on September 7, 2004, but did
not settle the dispute. On October 24, 2004, the Commission held a contested case hearing in the
San Angelo field office to determine Barrigan's impairment rating. During the hearing, the parties
stipulated that Barrigan's MMI date was November 18, 2003. After the hearing, the hearing officer
issued a decision and order finding that Barrigan's impairment rating was 20%.

 MHMR appealed this decision to the Commission Appeals Panel. The
decision became final and appealable through operation of law on January 18, 2005. MHMR then
filed suit for judicial review in Tom Green County under section 410.301 of the labor code. See
Tex. Lab. Code Ann. § 410.301 (West 2006).

 Before trial, Barrigan filed a plea to the jurisdiction and an evidentiary challenge to
the testimony of Dr. Foxcroft. The trial court held a pre-trial hearing on both the plea to the
jurisdiction and Barrigan's evidentiary challenge. At the conclusion of the hearing, the trial court
denied the plea to the jurisdiction and denied Barrigan's challenge to Dr. Foxcroft's testimony. The
case was then submitted to trial before a jury. At the end of trial, the jury returned a verdict finding
that Barrigan's impairment rating was 10%. The trial court entered judgment in accordance with the
jury verdict. It is from this judgment that Barrigan appeals.


DISCUSSION


 Barrigan raises six issues on appeal. First, Barrigan argues that the trial court failed
to properly assign the burden of proof in its charge to the jury. Barrigan also challenges the legal and
factual sufficiency of the evidence to support the jury's verdict. In addition, Barrigan complains that
the trial court erred in allowing the testimony of Dr. Foxcroft at trial. Finally, in two issues, Barrigan
contends that the trial court erred in denying her plea to the jurisdiction. Because we conclude that
Barrigan's issues are without merit, we affirm the judgment of the trial court.


Burden of Proof

 In her first issue, Barrigan contends that the trial court failed to properly assign the
burden of proof in its charge to the jury following the close of evidence at trial. In relevant part, the
trial court charged the jury as follows:


 Your answers should be based on a preponderance of the evidence. Preponderance
of the evidence means the greater weight and degree of the credible evidence
introduced to you and admitted in this case.


* * *



 Question 1


 What is Wendy Barrigan's impairment rating?


 20%:________________________________


 10%:________________________________



Barrigan contends that this question improperly placed the burden of proof upon her to establish by
a preponderance of the evidence that the proper impairment rating was 20%.

 At the beginning of trial, the trial court instructed the jury as follows:


 The Plaintiff, MHMR Services, has the burden of proof to prove by a preponderance
of the evidence their case and what they feel the proper impairment rating should be,
and because they are the Plaintiff, they get to go first in the evidence.



The record thus reflects that the trial court properly assigned the burden of proof to MHMR.

 The record also reflects that throughout the course of the trial, from voir dire to
closing argument, Barrigan's counsel repeatedly emphasized to the jury that MHMR had the burden
to prove Barrigan's impairment rating by a preponderance of the evidence. During voir dire,
Barrigan's counsel explained that MHMR had the burden of proof and analogized this burden to a
golfer who has finished play and is in the clubhouse simply waiting for the other golfers to finish. 
Barrigan's counsel also referred to the scales of justice and told the venire panel that Barrigan did
not have to bring any evidence to prevail because MHMR had the burden of proof. Later, during
opening statements, Barrigan's counsel again told the jury that MHMR had the burden of proof and
referred to his prior golf analogy, as well as the scales of justice and a teeter-totter. Then, during
closing arguments, Barrigan's counsel stated to the jury, "[Y]ou will recall early on and throughout
this whole trial, we have been talking about the burden of proof." Barrigan's counsel again told the
jury that MHMR had the burden of proof and referred again to the see-saw and teeter-totter
analogies, as well as to the scales of justice.

 We review Barrigan's claim of jury charge error under the harmless error rule. See
Tex. R. App. P. 44.1(a). Although we recognize that the trial court did not include an instruction
assigning the burden of proof to MHMR in its charge to the jury, we conclude that this omission, if
error, was harmless. See Tex. R. App. P. 44.1(a)(1). Given the trial court's instructions at the
beginning of trial and counsel's comments throughout the trial, Barrigan has not shown that the
omission of an instruction in the jury charge assigning the burden of proof to MHMR probably
caused the rendition of an improper judgment. Id. We overrule Barrigan's first issue.


Legal and Factual Sufficiency

 In her second and third issues, Barrigan contends that the evidence was legally
and factually insufficient to support the jury verdict. In reviewing the legal sufficiency of the
evidence, we view the evidence in the light most favorable to the judgment, crediting favorable
evidence if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror
could not. City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005). The test for legal sufficiency
is whether the evidence would enable reasonable and fair-minded people to reach the judgment being
reviewed. Id. at 827-28. In reviewing the factual sufficiency of the evidence, we consider and weigh
all of the evidence in the record, and we may overturn a judgment only if it is so against the great
weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986); Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985)
(citing In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951)).

 At trial, MHMR submitted documentary evidence including the medical records of
Barrigan's treating physician Dr. Robert LeGrand; the medical report of Dr. Sanders, the designated
doctor; and the medical records of Dr. Foxcroft, the physician appointed by the Commission to
evaluate Barrigan on behalf of MHMR. In addition to these records, Dr. Foxcroft testified at trial
that based on his experience, his review of Barrigan's medical records, and his physical examination
of Barrigan, he determined her impairment rating to be 10%.

 Viewing the record as a whole, crediting favorable evidence if reasonable jurors
could, and disregarding contrary evidence unless reasonable jurors could not, we find that reasonable
and fair-minded people could have considered the medical records submitted by MHMR and
Dr. Foxcroft's testimony and concluded that Barrigan's impairment rating was 10%. We hold that
the evidence was legally sufficient to support the jury verdict. See City of Keller, 168 S.W.3d at 807,
827-28. Having reviewed the record, we likewise hold that the evidence was factually sufficient to
support the jury verdict. See Cain, 709 S.W.2d at 176.


Admission of Dr. Foxcroft's Testimony

 In her fourth issue on appeal, Barrigan challenges the trial court's admission of
Dr. Foxcroft's testimony on the grounds that Dr. Foxcroft was not qualified to testify as an expert
witness in orthopedic surgery and that Dr. Foxcroft's testimony was unreliable.

 Rule 702 of the Texas Rules of Evidence allows a witness qualified as an expert by
knowledge, skill, experience, training, or education to testify on scientific, technical, or other
specialized subjects if the testimony would assist the trier of fact in understanding the evidence or
determining a fact issue. Tex. R. Evid. 702. Whether an expert is qualified is, under rule 104(a),
a preliminary question to be decided by the trial court. Tex. R. Evid. 104(a). The party offering
expert testimony bears the burden of proving that the witness is qualified under rule 702. Gammill
v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998). The offering party must prove
that the witness "possesses special knowledge as to the very matter on which he proposes to give an
opinion." Id. (internal quotes and citation omitted). We review the trial court's acceptance of an
expert witness's qualifications for abuse of discretion. Id. at 718-19.

 Barrigan argues that Dr. Foxcroft was not qualified to render an opinion on her
impairment rating because he was not board certified in orthopedic surgery by the American Board
of Medical Examiners and his orthopedic training is only recognized in Canada. Barrigan also
asserts that Dr. Foxcroft is unqualified because he has no privileges to perform surgery at any
hospital in the United States. The record reflects that Dr. Foxcroft earned his medical degree in 1965
from the University of Cape Town in South Africa. Dr. Foxcroft received orthopedic training at the
University of Canada and completed his orthopedic residency in Canada in 1983. Dr. Foxcroft has
been licensed to practice medicine in Texas since 1983 and has practiced orthopedic surgery from
1983 to 2000 in Brownwood, Texas. Dr. Foxcroft is a member of the Texas Orthopedic Association
and the Academy of Disability Evaluating Physicians. In addition, Dr. Foxcroft has been selected,
trained, and approved to give opinions on maximum medical improvement and impairment ratings
as a designated doctor by the Commission since 1995. During his appointment with the
Commission, Dr. Foxcroft has conducted over 1,000 examinations as a designated doctor.

 Based on this evidence, we conclude the trial court did not abuse its discretion in
accepting the qualifications of Dr. Foxcroft. See id. Barrigan's primary complaint regarding
Dr. Foxcroft's qualifications is that he is not board certified in the United States. However, Barrigan
cites no authority, and we have found none, to support the proposition that a doctor certified in a
foreign country is not qualified to provide expert testimony under rule 702. The rule requires only
that a witness be "qualified as an expert by knowledge, skill, experience, training, or education." 
Tex. R. Evid. 702. It does not require that a witness receive or acquire this "knowledge, skill,
experience, training, or education" in a particular country or from a particular institution. MHMR
has demonstrated that Dr. Foxcroft is qualified to opine on Barrigan's impairment rating based on
his many years of orthopedic education, training, and experience, as well as his training and
experience as a designated doctor, appointed and approved by the Commission, who has performed
over 1,000 patient evaluations.

 As part of her challenge to Dr. Foxcroft's testimony, Barrigan also contends that
Dr. Foxcroft's opinions were not reliable because Dr. Foxcroft did not use the advisories published
by the Commission to reach his conclusions regarding Barrigan's impairment rating and because he
disregarded the range-of-motion testing performed by Dr. Sanders. We disagree.

 Rule 702 requires that expert testimony be both relevant and reliable before it may
be admitted by the trial court. Id.; Gammill, 972 S.W.2d at 726. The reliability requirement of 
rule 702 focuses on the principles, research, and methodology underlying an expert's conclusions. 
E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 557 (Tex. 1995). Under this
requirement, expert testimony is unreliable if it is no more than "subjective belief or unsupported
speculation." Id. (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590 (1993)). Expert
testimony is also unreliable if there is too great an analytical gap between the data relied upon by the
expert and the opinion offered. Gammill, 972 S.W.2d at 727. In applying this reliability standard,
the trial court does not decide whether the expert's conclusions are correct; rather, the trial court
determines only whether the analysis used to reach those conclusions is reliable. Id. at 728. We
review the trial court's reliability determination for abuse of discretion. Guadalupe-Blanco River
Auth. v. Kraft, 77 S.W.3d 805, 806 (Tex. 2002).

 Dr. Foxcroft examined Barrigan and applied the fourth edition of the Guides to
determine that Barrigan's impairment rating was 10%. Dr. Foxcroft testified that the impairment
rating was based on his physical examination of Barrigan and the history related to him by Barrigan. 
The primary methodology for determining impairment ratings is the injury model set forth in the
fourth edition of the Guides. Under this model, a doctor uses objectively verifiable evidence to place
patients into one of eight diagnosis-related estimate (DRE) categories. The assigned DRE category
then determines the patient's impairment rating. Dr. Foxcroft testified that he did not use the
Commission advisories in his determination of Barrigan's impairment rating because the advisories
are discretionary. That is, the Commission does not require doctors to use the advisories when
determining an impairment rating. When asked why he chose not to use the advisories, Dr. Foxcroft
testified that he understood the law to require him to follow the Guides, but that use of the
Commission advisories was discretionary. Dr. Foxcroft's testimony is consistent with the labor code
which expressly requires the use of the Guides when determining an impairment rating for the
purpose of awarding impairment benefits. (5) Tex. Lab. Code Ann. § 408.124 (West 2006).

 Barrigan also complains that Dr. Foxcroft's disregard of the range-of-motion testing
performed by Dr. Sanders is further evidence that Dr. Foxcroft's testimony is unreliable. We find
this complaint to be without merit. According to the fourth edition of the Guides, a physician should
only resort to range-of-motion testing as a differentiator when it is not otherwise possible to
determine the patient's appropriate DRE category according to the injury model. (6) Based upon his
physical examination of Barrigan, Dr. Foxcroft testified that he was able to determine Barrigan's
impairment rating without the need of a differentiator such as range-of-motion testing. Although
Dr. Foxcroft agreed that Dr. Sanders conducted the range-of-motion testing properly and he did
not dispute the results of Dr. Sanders's range-of-motion testing, Dr. Foxcroft testified that it was
simply unnecessary. He explained that it was not necessary to perform the range-of-motion
testing as a differentiator because he had no problem assessing the appropriate DRE category for
Barrigan without it.

 On this record, we cannot say that the trial court abused its discretion in admitting
Dr. Foxcroft's testimony. Barrigan has not shown that the principles or analysis employed by
Dr. Foxcroft to determine Barrigan's impairment rating were unreliable. See Gammill, 927 S.W.2d 

at 728. The crux of Barrigan's complaints is that Dr. Foxcroft reached the wrong conclusion, but
the trial court is not called upon to decide whether the expert's conclusions are correct when it
evaluates reliability under rule 702. Id. We overrule Barrigan's fourth issue.


Plea to the Jurisdiction

 In her fifth and sixth issues, Barrigan argues that the trial court improperly denied her
plea to the jurisdiction because MHMR's petition for judicial review was untimely and
MHMR failed to comply with labor code section 408.123(e)--also known as the "90-day" rule. 
Tex. Lab. Code Ann. § 408.123(e) (West 2006). We reject Barrigan's arguments.

 The Texas Labor Code sets up a hybrid method of seeking judicial review of an
appeals panel decision. To seek judicial review on issues regarding compensability or eligibility for
benefits, a party must file its petition for judicial review not later than the "40th day after the date
on which the decision of the appeals panel was filed with the [Commission]." Tex. Lab. Code Ann.
§ 410.252 (providing 40-day deadline for judicial review), .301(a) (judicial review of decision
regarding compensability or eligibility for benefits shall be conducted as provided in this subchapter)
(West 2006). For judicial review of all other issues, the labor code specifies that review will be
conducted as provided in subchapter G, chapter 2001, of the government code. Id. § 410.255(a)
(West 2006). While review under section 410.301 of the labor code requires a party to file its
petition for review within 40 days, the government code gives a party only 30 days in which to file
a petition for judicial review. Tex. Gov't Code Ann. § 2001.176(a) (West 2000).


 Based on this distinction, Barrigan argues that MHMR's petition did not properly
invoke the trial court's jurisdiction because MHMR failed to file suit against the Commission within
30 days. Barrigan contends that MHMR was required to file suit within 30 days because MHMR
does not simply challenge Barrigan's impairment rating as allowed under section 410.301 of the
labor code, but instead, challenges the Commission's rulemaking authority to promulgate the
advisories in the first instance. Thus, Barrigan maintains that MHMR was required to file its petition
for judicial review within 30, not 40, days.

 The sole claim raised in MHMR's petition asserts that MHMR was aggrieved by the
appeals panel determination that Barrigan's impairment rating was 20%. There is no mention of the
Commission's rulemaking authority, the Commission's rules, or the advisories. The Texas Supreme
Court has recognized that a challenge to a patient's impairment rating is a challenge to
compensability or eligibility for benefits. Rodriguez v. Service Lloyds Ins. Co., 997 S.W.2d 248, 253
(Tex. 1999). We conclude that MHMR's petition for judicial review properly asserted a challenge
to Barrigan's impairment rating, thereby challenging compensability and eligibility for benefits, and
was timely filed within 40 days after the appeals panel decision was filed with the Commission. See
Tex. Lab. Code Ann. §§ 410.252, .301. We overrule Barrigan's fifth issue.

 In her sixth issue on appeal, Barrigan argues that the trial court improperly denied her
plea to the jurisdiction because MHMR failed to comply with section 408.123(e) of the labor code. 
See id. § 408.123(e). Known as the "90-day" rule, section 408.123(e) provides: 


 Except as otherwise provided by this section, an employee's first valid certification
of maximum medical improvement and first valid assignment of an impairment
rating is final if the certification or assignment is not disputed before the 91st day
after the date written notification of the certification or assignment is provided to the
employee and the carrier by verifiable means.



Id. Because Barrigan did not raise this issue before the appeals panel, we conclude that it has been
waived. Section 410.302(b) of the labor code provides that judicial review of an appeals panel
decision is limited to issues decided by the appeals panel. Id. § 410.302(b). Texas courts
have consistently held that issues not raised before an appeals panel may not be reviewed at trial in
district court. See Hefley v. Sentry Ins. Co., 131 S.W.3d 63, 65 (Tex. App.--San Antonio 2003,
pet. denied); Marts v. Transportation Ins. Co., 111 S.W.3d 699, 706 (Tex. App.--Fort Worth 2003,
pet. denied); St. Paul Ins. Co. v. Mefford, 994 S.W.2d 715, 720 (Tex. App.--Dallas 1999,
pet. denied); ESIS, Inc. v. Johnson, 908 S.W.2d 554, 562 (Tex. App.--Fort Worth 1995,
writ denied). Although Barrigan does not dispute that she failed to raise the 90-day rule before the
appeals panel, she argues instead that compliance with the 90-day rule is jurisdictional and therefore
may be raised at any time. This argument is contrary to the plain language of section 410.302.
Because Barrigan failed to raise the 90-day rule before the appeals panel, this issue has been waived,
see Hefley, 131 S.W.3d at 65; Marts, 111 S.W.3d at 706; St. Paul Ins. Co., 994 S.W.2d at 720; ESIS,
Inc., 908 S.W.2d at 562, and we conclude the trial court properly denied Barrigan's plea to the
jurisdiction. We overrule Barrigan's sixth issue.


CONCLUSION


 Having overruled Barrigan's issues on appeal, we affirm the judgment of the
trial court.





 __________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: January 4, 2007
1. Effective September 1, 2005, the legislature dissolved the Texas Workers' Compensation
Commission and created the Division of Workers' Compensation within the Texas Department of
Insurance. Act of June 1, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607. 
Because this change does not affect the outcome of this appeal, we refer to the agency as
the Commission.
2. In Texas Department of Insurance v. Lumbermens Mutual Casualty Company, No. 03-05-00785-CV, 2006 Tex. App. LEXIS 10976 (Tex. App.--Austin Dec. 21, 2006, no pet. h.) (op. on
reh'g), this Court invalidated the Commission's issuance and application of the advisory opinions
as an ultra vires act. We conclude, however, that the Court's decision in Lumbermens does not affect
the outcome of this case.
3. The fourth edition of the Guides to the Evaluation of Permanent Impairment uses eight
diagnosis-related estimate (DRE) categories to classify a patient's injury.
4. The fourth edition of the Guides to the Evaluation of Permanent Impairment is published
by the American Medical Association, and the Commission is required to use the Guides
when determining the existence and degree of an injured worker's permanent impairment. 
Tex. Lab. Code Ann. § 408.124 (West 2006); 28 Tex. Admin. Code § 130.1(c) (2006) (adopting the
fourth edition of the Guides for use in Texas).
5. Dr. Foxcroft's decision not to use the Commission's advisory opinions is likewise
consistent with this Court's recent opinion in Texas Department of Insurance v. Lumbermens
Mutual Casualty Company, 2006 Tex. App. LEXIS 10976, at *17, which invalidated the
Commission's issuance and application of the advisory opinions. Accordingly, we express no
opinion on the reliability of Dr. Foxcroft's testimony in the event he had chosen to use and apply the
advisory opinions.
6. Dr. Foxcroft testified that range-of-motion testing is one of several differentiators specified
in the fourth edition of the Guides.