# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00742-CV

**Wendy K. Barrigan, Appellant**

**v.**

**MHMR Services for the Concho Valley, Self Insured, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT NO. C-05-0161-C, HONORABLE THOMAS J. GOSSETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a jury verdict in a workers' compensation case to determine the appropriate impairment rating governing appellant Wendy Barrigan's claim for benefits. In six issues Barrigan challenges the trial court's denial of her plea to the jurisdiction, the trial court's instructions to the jury on burden of proof, the admissibility of expert testimony offered at trial, and the legal and factual sufficiency of evidence. For the reasons discussed below, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL BACKGROUND

Barrigan was employed by appellee MHMR Services of the Concho Valley and suffered a back injury when she lost control of a buffer machine while working as part of a cleaning crew. As a result of her injury, Barrigan underwent a two-level spinal fusion surgery. On November 18, 2003, Dr. Mark Sanders, an orthopedic surgeon and designated doctor appointed by

the Texas Workers' Compensation Commission,[1] examined Barrigan and determined that she had reached maximum medical improvement (MMI). Dr. Sanders also determined that Barrigan's impairment rating was 20%. Dr. Sanders based his assignment of Barrigan's impairment rating on two advisory opinions issued by the Commission—Commission Advisory Opinions 2003-10 and 2003-10b.[2] In relevant part, Commission advisory 2003-10 provides:

> 2.     Clarification of Rating for Spinal Fusion(s).
>
> For spinal fusion, the impairment rating is determined by the preoperative x-ray tests for "motion segment integrity" (page 102, 4th Edition of the *Guides to the Evaluation of Permanent Impairment*). If preoperative x-rays were not performed, the rating may be determined using the following criteria:
>
> a.     One level uncomplicated fusion meets the criteria for DRE Category II,[3] Structural Inclusions. This spinal abnormality is equivalent to a healed "less than 25% Compression Fracture of one vertebral body".
>
> b.     Multilevel fusion meets the criteria for DRE Category IV, Structural Inclusions, as this multilevel fusion is equivalent to "multilevel spine segment structural compromise" per DRE IV.

---

[1] Effective September 1, 2005, the legislature dissolved the Texas Workers' Compensation Commission and created the Division of Workers' Compensation within the Texas Department of Insurance. Act of June 1, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607. Because this change does not affect the outcome of this appeal, we refer to the agency as the Commission.

[2] In *Texas Department of Insurance v. Lumbermens Mutual Casualty Company*, No. 03-05-00785-CV, 2006 Tex. App. LEXIS 10976 (Tex. App.—Austin Dec. 21, 2006, no pet. h.) (op. on reh'g), this Court invalidated the Commission's issuance and application of the advisory opinions as an ultra vires act. We conclude, however, that the Court's decision in *Lumbermens* does not affect the outcome of this case.

[3] The fourth edition of the *Guides to the Evaluation of Permanent Impairment* uses eight diagnosis-related estimate (DRE) categories to classify a patient's injury.

* * *

4.      In the Texas workers' compensation system, the injured employee's impairment rating is based on the employee's condition on the date of maximum medical improvement or the date of statutory maximum medical improvement, whichever is earlier.

Commission advisory 2003-10b is identical to 2003-10 with the following addition:

c.      Health care providers may utilize the range-of-motion or other methodology if indicated (as with any condition in the 4th Edition Guides) that most accurately reflects the impairment rating evident for each injured worker.

After receiving Dr. Sanders's impairment rating, MHMR asked for clarification based on Dr. Sanders's use of the advisory opinions to assess Barrigan's impairment rating. In response, Dr. Sanders re-evaluated Barrigan on June 8, 2004, and performed range-of-motion testing to determine the appropriate impairment rating. Range-of-motion testing is an alternative method of testing, which can be used as allowed in the fourth edition of the *Guides to the Evaluation of Permanent Impairment*,[4] when there is a dispute as to the category of impairment to assign a patient. The range-of-motion testing performed by Dr. Sanders showed Barrigan to have a 27% impairment rating. Based on the range-of-motion testing, Dr. Sanders reaffirmed his original impairment rating of 20%.

---

[4] The fourth edition of the *Guides to the Evaluation of Permanent Impairment* is published by the American Medical Association, and the Commission is required to use the *Guides* when determining the existence and degree of an injured worker's permanent impairment. Tex. Lab. Code Ann. § 408.124 (West 2006); 28 Tex. Admin. Code § 130.1(c) (2006) (adopting the fourth edition of the *Guides* for use in Texas).

MHMR then requested that Barrigan submit to a "required medical examination" by another physician to obtain an alternate impairment rating. *See* Tex. Lab. Code Ann. § 408.004(a) (West 2006). As part of its RME request, MHMR asked the examining doctor to disregard the Commission's 2003 advisory opinions. The Commission appointed Dr. Paul Foxcroft to re-evaluate Barrigan on behalf of MHMR.

On August 5, 2004, Dr. Foxcroft examined Barrigan and determined that Barrigan's impairment rating was 10%. Dr. Foxcroft did not criticize Dr. Sanders's evaluations of Barrigan and independently verified the range-of-motion testing performed by Dr. Sanders. Dr. Foxcroft agreed with Dr. Sanders that Barrigan had reached MMI in November 2003. Nevertheless, Dr. Foxcroft dismissed the range-of-motion testing as unnecessary and opined that Dr. Sanders's use of the Commission advisory opinions was in direct contravention of the *Guides*, which Dr. Foxcroft understood to be the law in Texas.

In light of Dr. Foxcroft's opinion, MHMR challenged Barrigan's impairment rating as assigned by Dr. Sanders. A benefit review conference was held on September 7, 2004, but did not settle the dispute. On October 24, 2004, the Commission held a contested case hearing in the San Angelo field office to determine Barrigan's impairment rating. During the hearing, the parties stipulated that Barrigan's MMI date was November 18, 2003. After the hearing, the hearing officer issued a decision and order finding that Barrigan's impairment rating was 20%.

MHMR appealed this decision to the Commission Appeals Panel. The decision became final and appealable through operation of law on January 18, 2005. MHMR then

4

filed suit for judicial review in Tom Green County under section 410.301 of the labor code. *See* Tex. Lab. Code Ann. § 410.301 (West 2006).

Before trial, Barrigan filed a plea to the jurisdiction and an evidentiary challenge to the testimony of Dr. Foxcroft. The trial court held a pre-trial hearing on both the plea to the jurisdiction and Barrigan's evidentiary challenge. At the conclusion of the hearing, the trial court denied the plea to the jurisdiction and denied Barrigan's challenge to Dr. Foxcroft's testimony. The case was then submitted to trial before a jury. At the end of trial, the jury returned a verdict finding that Barrigan's impairment rating was 10%. The trial court entered judgment in accordance with the jury verdict. It is from this judgment that Barrigan appeals.

## DISCUSSION

Barrigan raises six issues on appeal. First, Barrigan argues that the trial court failed to properly assign the burden of proof in its charge to the jury. Barrigan also challenges the legal and factual sufficiency of the evidence to support the jury's verdict. In addition, Barrigan complains that the trial court erred in allowing the testimony of Dr. Foxcroft at trial. Finally, in two issues, Barrigan contends that the trial court erred in denying her plea to the jurisdiction. Because we conclude that Barrigan's issues are without merit, we affirm the judgment of the trial court.

### *Burden of Proof*

In her first issue, Barrigan contends that the trial court failed to properly assign the burden of proof in its charge to the jury following the close of evidence at trial. In relevant part, the trial court charged the jury as follows:

5

Your answers should be based on a preponderance of the evidence. Preponderance of the evidence means the greater weight and degree of the credible evidence introduced to you and admitted in this case.

* * *

Question 1

What is Wendy Barrigan's impairment rating?

20%:_____

10%:_____

Barrigan contends that this question improperly placed the burden of proof upon her to establish by a preponderance of the evidence that the proper impairment rating was 20%.

At the beginning of trial, the trial court instructed the jury as follows:

The Plaintiff, MHMR Services, has the burden of proof to prove by a preponderance of the evidence their case and what they feel the proper impairment rating should be, and because they are the Plaintiff, they get to go first in the evidence.

The record thus reflects that the trial court properly assigned the burden of proof to MHMR.

The record also reflects that throughout the course of the trial, from voir dire to closing argument, Barrigan's counsel repeatedly emphasized to the jury that MHMR had the burden to prove Barrigan's impairment rating by a preponderance of the evidence. During voir dire, Barrigan's counsel explained that MHMR had the burden of proof and analogized this burden to a golfer who has finished play and is in the clubhouse simply waiting for the other golfers to finish. Barrigan's counsel also referred to the scales of justice and told the venire panel that Barrigan did not have to bring any evidence to prevail because MHMR had the burden of proof. Later, during

6

opening statements, Barrigan's counsel again told the jury that MHMR had the burden of proof and referred to his prior golf analogy, as well as the scales of justice and a teeter-totter. Then, during closing arguments, Barrigan's counsel stated to the jury, "[Y]ou will recall early on and throughout this whole trial, we have been talking about the burden of proof." Barrigan's counsel again told the jury that MHMR had the burden of proof and referred again to the see-saw and teeter-totter analogies, as well as to the scales of justice.

We review Barrigan's claim of jury charge error under the harmless error rule. *See* Tex. R. App. P. 44.1(a). Although we recognize that the trial court did not include an instruction assigning the burden of proof to MHMR in its charge to the jury, we conclude that this omission, if error, was harmless. *See* Tex. R. App. P. 44.1(a)(1). Given the trial court's instructions at the beginning of trial and counsel's comments throughout the trial, Barrigan has not shown that the omission of an instruction in the jury charge assigning the burden of proof to MHMR probably caused the rendition of an improper judgment. *Id.* We overrule Barrigan's first issue.

### Legal and Factual Sufficiency

In her second and third issues, Barrigan contends that the evidence was legally and factually insufficient to support the jury verdict. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the judgment being reviewed. *Id.* at 827-28. In reviewing the factual sufficiency of the evidence, we consider and weigh

7

all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985) (citing *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951)).

At trial, MHMR submitted documentary evidence including the medical records of Barrigan's treating physician Dr. Robert LeGrand; the medical report of Dr. Sanders, the designated doctor; and the medical records of Dr. Foxcroft, the physician appointed by the Commission to evaluate Barrigan on behalf of MHMR. In addition to these records, Dr. Foxcroft testified at trial that based on his experience, his review of Barrigan's medical records, and his physical examination of Barrigan, he determined her impairment rating to be 10%.

Viewing the record as a whole, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, we find that reasonable and fair-minded people could have considered the medical records submitted by MHMR and Dr. Foxcroft's testimony and concluded that Barrigan's impairment rating was 10%. We hold that the evidence was legally sufficient to support the jury verdict. *See City of Keller*, 168 S.W.3d at 807, 827-28. Having reviewed the record, we likewise hold that the evidence was factually sufficient to support the jury verdict. *See Cain*, 709 S.W.2d at 176.

***Admission of Dr. Foxcroft's Testimony***

In her fourth issue on appeal, Barrigan challenges the trial court's admission of Dr. Foxcroft's testimony on the grounds that Dr. Foxcroft was not qualified to testify as an expert witness in orthopedic surgery and that Dr. Foxcroft's testimony was unreliable.

8

Rule 702 of the Texas Rules of Evidence allows a witness qualified as an expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact issue. Tex. R. Evid. 702. Whether an expert is qualified is, under rule 104(a), a preliminary question to be decided by the trial court. Tex. R. Evid. 104(a). The party offering expert testimony bears the burden of proving that the witness is qualified under rule 702. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998). The offering party must prove that the witness "possesses special knowledge as to the very matter on which he proposes to give an opinion." *Id*. (internal quotes and citation omitted). We review the trial court's acceptance of an expert witness's qualifications for abuse of discretion. *Id.* at 718-19.

Barrigan argues that Dr. Foxcroft was not qualified to render an opinion on her impairment rating because he was not board certified in orthopedic surgery by the American Board of Medical Examiners and his orthopedic training is only recognized in Canada. Barrigan also asserts that Dr. Foxcroft is unqualified because he has no privileges to perform surgery at any hospital in the United States. The record reflects that Dr. Foxcroft earned his medical degree in 1965 from the University of Cape Town in South Africa. Dr. Foxcroft received orthopedic training at the University of Canada and completed his orthopedic residency in Canada in 1983. Dr. Foxcroft has been licensed to practice medicine in Texas since 1983 and has practiced orthopedic surgery from 1983 to 2000 in Brownwood, Texas. Dr. Foxcroft is a member of the Texas Orthopedic Association and the Academy of Disability Evaluating Physicians. In addition, Dr. Foxcroft has been selected, trained, and approved to give opinions on maximum medical improvement and impairment ratings

as a designated doctor by the Commission since 1995. During his appointment with the Commission, Dr. Foxcroft has conducted over 1,000 examinations as a designated doctor.

Based on this evidence, we conclude the trial court did not abuse its discretion in accepting the qualifications of Dr. Foxcroft. *See id.* Barrigan's primary complaint regarding Dr. Foxcroft's qualifications is that he is not board certified in the United States. However, Barrigan cites no authority, and we have found none, to support the proposition that a doctor certified in a foreign country is not qualified to provide expert testimony under rule 702. The rule requires only that a witness be "qualified as an expert by knowledge, skill, experience, training, or education." Tex. R. Evid. 702. It does not require that a witness receive or acquire this "knowledge, skill, experience, training, or education" in a particular country or from a particular institution. MHMR has demonstrated that Dr. Foxcroft is qualified to opine on Barrigan's impairment rating based on his many years of orthopedic education, training, and experience, as well as his training and experience as a designated doctor, appointed and approved by the Commission, who has performed over 1,000 patient evaluations.

As part of her challenge to Dr. Foxcroft's testimony, Barrigan also contends that Dr. Foxcroft's opinions were not reliable because Dr. Foxcroft did not use the advisories published by the Commission to reach his conclusions regarding Barrigan's impairment rating and because he disregarded the range-of-motion testing performed by Dr. Sanders. We disagree.

Rule 702 requires that expert testimony be both relevant and reliable before it may be admitted by the trial court. *Id.*; *Gammill*, 972 S.W.2d at 726. The reliability requirement of rule 702 focuses on the principles, research, and methodology underlying an expert's conclusions.

10

*E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). Under this requirement, expert testimony is unreliable if it is no more than "subjective belief or unsupported speculation." *Id*. (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)). Expert testimony is also unreliable if there is too great an analytical gap between the data relied upon by the expert and the opinion offered. *Gammill*, 972 S.W.2d at 727. In applying this reliability standard, the trial court does not decide whether the expert's conclusions are correct; rather, the trial court determines only whether the analysis used to reach those conclusions is reliable. *Id*. at 728. We review the trial court's reliability determination for abuse of discretion. *Guadalupe-Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 806 (Tex. 2002).

Dr. Foxcroft examined Barrigan and applied the fourth edition of the *Guides* to determine that Barrigan's impairment rating was 10%. Dr. Foxcroft testified that the impairment rating was based on his physical examination of Barrigan and the history related to him by Barrigan. The primary methodology for determining impairment ratings is the injury model set forth in the fourth edition of the *Guides*. Under this model, a doctor uses objectively verifiable evidence to place patients into one of eight diagnosis-related estimate (DRE) categories. The assigned DRE category then determines the patient's impairment rating. Dr. Foxcroft testified that he did not use the Commission advisories in his determination of Barrigan's impairment rating because the advisories are discretionary. That is, the Commission does not require doctors to use the advisories when determining an impairment rating. When asked why he chose not to use the advisories, Dr. Foxcroft testified that he understood the law to require him to follow the *Guides*, but that use of the Commission advisories was discretionary. Dr. Foxcroft's testimony is consistent with the labor code

11

which expressly requires the use of the *Guides* when determining an impairment rating for the purpose of awarding impairment benefits.[5] Tex. Lab. Code Ann. § 408.124 (West 2006).

Barrigan also complains that Dr. Foxcroft's disregard of the range-of-motion testing performed by Dr. Sanders is further evidence that Dr. Foxcroft's testimony is unreliable. We find this complaint to be without merit. According to the fourth edition of the *Guides*, a physician should only resort to range-of-motion testing as a differentiator when it is not otherwise possible to determine the patient's appropriate DRE category according to the injury model.[6] Based upon his physical examination of Barrigan, Dr. Foxcroft testified that he was able to determine Barrigan's impairment rating without the need of a differentiator such as range-of-motion testing. Although Dr. Foxcroft agreed that Dr. Sanders conducted the range-of-motion testing properly and he did not dispute the results of Dr. Sanders's range-of-motion testing, Dr. Foxcroft testified that it was simply unnecessary. He explained that it was not necessary to perform the range-of-motion testing as a differentiator because he had no problem assessing the appropriate DRE category for Barrigan without it.

On this record, we cannot say that the trial court abused its discretion in admitting Dr. Foxcroft's testimony. Barrigan has not shown that the principles or analysis employed by

---

[5] Dr. Foxcroft's decision not to use the Commission's advisory opinions is likewise consistent with this Court's recent opinion in *Texas Department of Insurance v. Lumbermens Mutual Casualty Company*, 2006 Tex. App. LEXIS 10976, at *17, which invalidated the Commission's issuance and application of the advisory opinions. Accordingly, we express no opinion on the reliability of Dr. Foxcroft's testimony in the event he had chosen to use and apply the advisory opinions.

[6] Dr. Foxcroft testified that range-of-motion testing is one of several differentiators specified in the fourth edition of the *Guides*.

Dr. Foxcroft to determine Barrigan's impairment rating were unreliable. *See Gammill*, 927 S.W.2d at 728. The crux of Barrigan's complaints is that Dr. Foxcroft reached the wrong conclusion, but the trial court is not called upon to decide whether the expert's conclusions are correct when it evaluates reliability under rule 702. *Id*. We overrule Barrigan's fourth issue.

***Plea to the Jurisdiction***

In her fifth and sixth issues, Barrigan argues that the trial court improperly denied her plea to the jurisdiction because MHMR's petition for judicial review was untimely and MHMR failed to comply with labor code section 408.123(e)—also known as the "90-day" rule. Tex. Lab. Code Ann. § 408.123(e) (West 2006). We reject Barrigan's arguments.

The Texas Labor Code sets up a hybrid method of seeking judicial review of an appeals panel decision. To seek judicial review on issues regarding compensability or eligibility for benefits, a party must file its petition for judicial review not later than the "40th day after the date on which the decision of the appeals panel was filed with the [Commission]." Tex. Lab. Code Ann. § 410.252 (providing 40-day deadline for judicial review), .301(a) (judicial review of decision regarding compensability or eligibility for benefits shall be conducted as provided in this subchapter) (West 2006). For judicial review of all other issues, the labor code specifies that review will be conducted as provided in subchapter G, chapter 2001, of the government code. *Id*. § 410.255(a) (West 2006). While review under section 410.301 of the labor code requires a party to file its petition for review within 40 days, the government code gives a party only 30 days in which to file a petition for judicial review. Tex. Gov't Code Ann. § 2001.176(a) (West 2000).

13

Based on this distinction, Barrigan argues that MHMR's petition did not properly invoke the trial court's jurisdiction because MHMR failed to file suit against the Commission within 30 days. Barrigan contends that MHMR was required to file suit within 30 days because MHMR does not simply challenge Barrigan's impairment rating as allowed under section 410.301 of the labor code, but instead, challenges the Commission's rulemaking authority to promulgate the advisories in the first instance. Thus, Barrigan maintains that MHMR was required to file its petition for judicial review within 30, not 40, days.

The sole claim raised in MHMR's petition asserts that MHMR was aggrieved by the appeals panel determination that Barrigan's impairment rating was 20%. There is no mention of the Commission's rulemaking authority, the Commission's rules, or the advisories. The Texas Supreme Court has recognized that a challenge to a patient's impairment rating is a challenge to compensability or eligibility for benefits. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 253 (Tex. 1999). We conclude that MHMR's petition for judicial review properly asserted a challenge to Barrigan's impairment rating, thereby challenging compensability and eligibility for benefits, and was timely filed within 40 days after the appeals panel decision was filed with the Commission. *See* Tex. Lab. Code Ann. §§ 410.252, .301. We overrule Barrigan's fifth issue.

In her sixth issue on appeal, Barrigan argues that the trial court improperly denied her plea to the jurisdiction because MHMR failed to comply with section 408.123(e) of the labor code. *See id.* § 408.123(e). Known as the "90-day" rule, section 408.123(e) provides:

> Except as otherwise provided by this section, an employee's first valid certification of maximum medical improvement and first valid assignment of an impairment rating is final if the certification or assignment is not disputed before the 91st day

14

after the date written notification of the certification or assignment is provided to the employee and the carrier by verifiable means.

*Id.* Because Barrigan did not raise this issue before the appeals panel, we conclude that it has been waived. Section 410.302(b) of the labor code provides that judicial review of an appeals panel decision is limited to issues decided by the appeals panel. *Id.* § 410.302(b). Texas courts have consistently held that issues not raised before an appeals panel may not be reviewed at trial in district court. *See Hefley v. Sentry Ins. Co.*, 131 S.W.3d 63, 65 (Tex. App.—San Antonio 2003, pet. denied); *Marts v. Transportation Ins. Co.*, 111 S.W.3d 699, 706 (Tex. App.—Fort Worth 2003, pet. denied); *St. Paul Ins. Co. v. Mefford*, 994 S.W.2d 715, 720 (Tex. App.—Dallas 1999, pet. denied); *ESIS, Inc. v. Johnson*, 908 S.W.2d 554, 562 (Tex. App.—Fort Worth 1995, writ denied). Although Barrigan does not dispute that she failed to raise the 90-day rule before the appeals panel, she argues instead that compliance with the 90-day rule is jurisdictional and therefore may be raised at any time. This argument is contrary to the plain language of section 410.302. Because Barrigan failed to raise the 90-day rule before the appeals panel, this issue has been waived, *see Hefley*, 131 S.W.3d at 65; *Marts*, 111 S.W.3d at 706; *St. Paul Ins. Co.*, 994 S.W.2d at 720; *ESIS, Inc.*, 908 S.W.2d at 562, and we conclude the trial court properly denied Barrigan's plea to the jurisdiction. We overrule Barrigan's sixth issue.

## CONCLUSION

Having overruled Barrigan's issues on appeal, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:   January 4, 2007

16