# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=============================

## ON MOTION FOR REHEARING

=============================

## NO. 03-05-00785-CV

**Texas Department of Insurance, Division of Workers' Compensation, formerly known as Texas Workers' Compensation Commission, Appellant**

**v.**

**Lumbermens Mutual Casualty Company; Petroleum Casualty Company; State Office of Risk Management; International Paper, Self-Insured; Dallas Fire Insurance Company and Harrison County, Texas, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. GN401643, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

We withdraw our October 24, 2006 opinion and judgment, and substitute this opinion to note that we do not adopt the trial court's characterization of the issuance of the Division's advisories as an "attempt at ad hoc rulemaking." Because this change does not alter the outcome of the case, we overrule the Division's motion for rehearing, which seeks reversal of the trial court's judgment.

Texas Department of Insurance, Division of Workers' Compensation (the Division)[1] appeals from an order, entered by the trial court in a declaratory judgment action brought by

_____

[1] Effective September 1, 2005, the legislature dissolved the Texas Workers' Compensation Commission and created the Division of Workers' Compensation within the Texas Department of Insurance. Act of June 1, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607. For convenience, we will refer to the agency as the Division.

Lumbermens Mutual Casualty Company, Petroleum Casualty Company, State Office of Risk Management, International Paper Company, Dallas Fire Insurance Company, and Harrison County (collectively, the carriers),[2] declaring that the issuance of two advisories by the Division constituted an invalid attempt at ad hoc rulemaking and that application of the advisories is an ultra vires act, and enjoining the Division from further application and enforcement of the advisories. The Division argues that the trial court lacked subject matter jurisdiction and that even if the court had jurisdiction, the advisories are not rules and issuing and applying them is within the Division's statutory authority. We affirm the trial court's judgment.

## BACKGROUND

The Division administers the Texas Workers' Compensation Act. Under the Act, an injured worker may become entitled to receive impairment income benefits, which are based on an impairment rating assigned by a physician. Tex. Lab. Code Ann. § 408.121 (West 2006). Also, if an injured worker is assigned an impairment rating of fifteen percent or higher, she may become eligible for supplemental income benefits after the expiration of impairment income benefits. *Id.* § 408.142 (West 2006).

The Division is required to use the *Guides to the Evaluation of Permanent Impairment*, published by the American Medical Association (AMA), in determining the existence and degree of an injured worker's permanent impairment. *Id.* § 408.124 (West 2006). The legislature granted the Division discretion to adopt the fourth edition of the *Guides*, *id.* § 408.124(c), which it did on June 7, 2000, after public notice and comment. *See* 28 Tex. Admin. Code § 130.1(c)

---

[2] Lumbermens Mutual Casualty Company was the plaintiff in the trial court, and the other carriers intervened.

(2006). The fourth edition of the *Guides* must be used for impairment ratings issued on or after October 15, 2001. *Id.* § 130.1(c)(2)(B)(I).

The principal methodology found in the fourth edition of the *Guides* is its injury model, which uses objectively verifiable evidence to place patients into one of eight diagnosis-related estimate (DRE) categories. The dispute in this case concerns the proper standard for assessing the DRE IV category for the lumbosacral spine in the context of spinal fusion surgeries. The *Guides* requires either loss of motion segment integrity or a structural inclusion for a patient to be given a rating of DRE IV for the lumbosacral spine.

The *Guides* explains loss of motion segment integrity:

> A motion segment of the spine is defined as two adjacent vertebrae, an intercalated disk, and the vertebral facet joints. Loss of motion segment or structural integrity is defined as abnormal back-and-forth motion (translation) or abnormal angular motion of a motion segment with respect to an adjacent motion segment.

For a patient to be diagnosed with loss of motion segment integrity for the lumbosacral spine, the *Guides* requires that flexion and extension roentgenograms (x-rays) taken before the spinal fusion surgery establish translation of at least five millimeters of one vertebra on another or angular motion at a motion segment that is eleven degrees more than at an adjacent motion segment. Loss of motion segment integrity is frequently treated by performing spinal fusion surgery, which involves removing the disk between two vertebrae and fusing those vertebrae together. In some instances, more than one disk is removed and more than two vertebrae are fused together.

The structural inclusions for the DRE IV category for the lumbosacral spine are: "(1) Greater than 50% compression of one vertebral body without residual neurologic compromise; [and]

3

(2) multilevel spine segment structural compromise, as with fractures or dislocations, without residual neurologic motor compromise."

The Division's Medical Advisor, Dr. William Nemeth, testified that instances where doctors performed spinal fusion surgeries but did not take preoperative flexion and extension x-rays created "a big hole in the system" because confusion existed in the medical community regarding how to rate those patients. Because of this confusion, Nemeth drafted Advisory 2003-10, which was issued by the Division's Executive Director Richard Reynolds on July 22, 2003. Nemeth also drafted Advisory 2003-10B, which the executive director issued on February 24, 2004. The second advisory added an additional section to the first. The advisories attempt to eliminate the "big hole in the system" by providing an alternative standard for assessing a DRE IV category when there are no preoperative x-rays.

The controversial provision included in both advisories states that "[i]f preoperative x-rays were not performed, the rating may be determined using the following criteria: . . . b. Multilevel fusion meets the criteria for DRE Category IV, Structural Inclusions, as this multilevel fusion is equivalent to 'multilevel spine segment structural compromise' per DRE IV." The advisories also state that a one-level fusion meets the criteria for DRE II as a structural inclusion.

Nemeth explained at trial that when two or more vertebrae are fused together, the motion segments above and below the fused vertebrae necessarily move more than they did before the surgery because of "compensatory motion." "So by definition, at that point, if you didn't have loss of motion segment integrity before surgery, you have it afterwards," he testified.

The carriers base their complaint about the advisories on the statement in the *Guides* that "[w]ith the Injury Model, surgery to treat an impairment does not modify the original impairment estimate, which remains the same in spite of any changes in signs or symptoms that may

4

follow the surgery and irrespective of whether the patient has a favorable or unfavorable response to treatment." The carriers' expert witness, Dr. Marc Taylor, testified that under the injury model of the fourth edition of the *Guides*, patients may only be rated in the DRE IV category for the lumbosacral spine because of loss of motion segment integrity or structural inclusions caused by the underlying injury, not for conditions caused by surgery or other treatment for the underlying injury.

The carriers argue that the advisories allow doctors to place injured workers in categories DRE IV and DRE V when the *Guides* would require them to be placed in DRE II or DRE III, resulting in increased impairment income benefits. Also, because category DRE III for the lumbosacral spine translates to a ten percent impairment rating while DRE IV translates to a twenty percent impairment rating, the advisories allow some injured workers to become eligible for supplemental income benefits when they would not be eligible under the *Guides*.

Lumbermens Mutual Casualty Company filed suit against the Division seeking (1) judicial review of a Division decision in a contested case hearing applying the advisories and (2) a declaratory judgment under the Administrative Procedure Act (APA), *see* Tex. Gov't Code Ann. § 2001.038 (West 2000), and the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997), that the advisories are inconsistent with Division rule 130.1 and that their issuance and application is outside the Division's statutory authority. The trial court severed the suit for judicial review of the contested case hearing, and the other carriers then intervened in the declaratory judgment action. After a trial, the district court entered judgment declaring that the issuance of the advisories was an invalid attempt at ad hoc rulemaking and that the application of the advisories is an ultra vires act, and enjoining the Division from applying the advisories.

5

The Division appeals from the declaratory judgment, arguing that the trial court lacked subject matter jurisdiction under both the APA and the UDJA and that the Division is immune from suit because of sovereign immunity. The Division contends that even if the court had jurisdiction, its decision was improper because the advisories are not rules and applying them is within the Division's statutory authority because the advisories are consistent with the *Guides*.

## DISCUSSION

### Subject Matter Jurisdiction

In its second issue, the Division argues that the trial court lacked jurisdiction under the UDJA. The Division contends that because the carriers may seek judicial review of contested case hearings where the Division has applied the advisories, *see* Tex. Lab. Code Ann. § 410.251 (West 2006), the UDJA does not confer jurisdiction to review the decisions in those same hearings through a declaratory judgment action. The Division further asserts that the carriers did not allege a valid independent basis for jurisdiction under the UDJA.

A plaintiff who sues the State must establish the State's consent to suit. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Otherwise, sovereign immunity from suit defeats a trial court's subject matter jurisdiction. *Id.* Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If jurisdiction was proper under the UDJA, the suit was not barred by sovereign immunity. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 516 (Tex. App.—Austin 2003, pet. denied).

The UDJA does not confer jurisdiction on trial courts; rather, it is merely a procedural device for deciding cases already within a court's jurisdiction. *State v. Morales*, 869 S.W.2d 941,

6

947 (Tex. 1994). When a statute provides a specific method for attacking an agency order, a declaratory judgment action directed at that order will not lie. *Young Chevrolet v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex. App.—Austin 1998, pet. denied).

The Division argues that because the carriers are permitted to seek judicial review of hearing decisions applying the advisories under section 410.251 of the labor code, they are barred from bringing declaratory judgment actions under the UDJA challenging the same decisions. The Division asserts that because the language of the advisories is permissive, they may not be challenged as rules in suits for declaratory judgment. The Division insists that if some of its appeals panels have held the advisories to be mandatory, the improper application of the advisories can only be challenged in suits for judicial review of those specific contested case hearings.

The Division misconstrues the carriers' position. While the carriers do object to the appeals panels' holdings regarding the advisories, the carriers also complain of the issuance of the advisories. The carriers contend that the fourth edition of the *Guides* is the only permissible source for determining impairment ratings in Texas. Tex. Lab. Code Ann. § 408.124; 28 Tex. Admin. Code § 130.1(c); *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 526 (Tex. 1995) (discussing workers' compensation laws in other states and concluding that "[o]ur Act, however, does not allow such flexibility, as it specifically requires all determinations of impairment to be made under the *Guides*"). The carriers assert that because the advisories allow doctors to take spinal fusion surgeries into account when assigning impairment ratings and because the fourth edition of the *Guides* expressly forbids taking surgery into account when determining impairment using the injury model, the advisories are inconsistent with the *Guides* and thus their issuance was outside the Division's authority. The carriers' argument does not rest on the advisories' being mandatory; rather, it has the

7

same force whether the advisories allow consideration of surgery or require it. Because the carriers challenge the issuance of the advisories, we reject the Division's argument that the availability of judicial review of contested case hearings under section 410.251 of the labor code bars the carriers' UDJA action.

The Division also argues that the carriers did not allege a valid independent basis for jurisdiction to support their UDJA suit. However, as this Court has held, a UDJA action "to interpret the scope of an agency's statutory authority . . . is sufficient to invoke the trial court's jurisdiction and to waive sovereign immunity." *Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 516 (Tex. App.—Austin 2003, pet. denied) (citing *Public Util. Comm'n v. City of Austin*, 728 S.W.2d 907, 910-11 (Tex. App.—Austin 1987, writ ref'd n.r.e.)); *see also Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 154 (Tex. App.—Austin 1998, no pet.). As discussed above, the carriers argue that issuance of the advisories was outside the Division's authority. Accordingly, we hold that the trial court had jurisdiction under the UDJA and overrule the Division's second issue.

In its first issue, the Division argues that the trial court lacked subject matter jurisdiction under the APA because the advisories in question are not rules. The carriers brought suit under both the APA and the UDJA. The trial court held that it had subject matter jurisdiction, although it did not specify on which basis. We need not address whether the advisories are rules as defined in the APA because we have held that the trial court had jurisdiction over the declaratory judgment action pursuant to the UDJA.

**Invalid Ad Hoc Rulemaking and Ultra Vires Application**

In its third and fourth issues, the Division contends that the trial court erred by declaring that the Division's issuance of the advisories constituted an invalid attempt at ad hoc

rulemaking and that the application of the advisories is an ultra vires act, and enjoining any further use of the advisories by the Division.

First, the Division argues that the advisories in question could not be ad hoc rules because they are not rules within the definition in the APA. While we do not adopt the trial court's characterization of the issuance of the advisories as an "attempt at ad hoc rulemaking," the advisories were invalid from their issuance, regardless of the label attached to them, because they exceed the Division's statutory authority, as discussed below.

Next, the Division argues that the trial court erred by declaring that the advisories are invalid and that applying them is an ultra vires act, and by enjoining their further use. The Division insists that the advisories merely interpret the *Guides* and do not modify or contradict the AMA's methodology. The Division points to language in the *Guides* stating that doctors' judgment and experience must be used in assessing impairment ratings. The Division argues that competent doctors often disagree about how to assess impairment ratings and that the advisories were promulgated to address confusion that existed in the field and merely provide a suggested approach that doctors "may wish to consider."

Dr. Nemeth's testimony indicated that there was considerable confusion in the field regarding assigning impairment ratings to patients who had undergone spinal fusion surgery but lacked preoperative flexion and extension x-rays. It is also arguably medically sound to define structural inclusions for the lumbosacral spine to include spinal fusions; the fifth edition of the *Guides*, not yet adopted in Texas, takes this approach. While it is doubtless correct that medical judgment and experience are necessary to assign impairment ratings to injured workers, the *Guides*

9

unambiguously states that "[w]ith the Injury Model, surgery to treat an impairment does not modify the original impairment estimate, which remains the same in spite of any changes in signs or symptoms that may follow the surgery and irrespective of whether the patient has a favorable or unfavorable response to treatment." Thus, under the injury model of the *Guides*, doctors may not use their medical judgment or experience to take surgery or the effect of surgery into account when assigning impairment ratings. By issuing and applying advisories that allow doctors to do just that, the Division has acted outside its statutory authority because the fourth edition of the *Guides* is the only permissible source for determining impairment ratings within the Texas workers' compensation system. Tex. Lab. Code Ann. § 408.124; 28 Tex. Admin. Code § 130.1(c); *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 526 (Tex. 1995) (discussing workers' compensation laws in other states and concluding that "[o]ur Act, however, does not allow such flexibility, as it specifically requires all determinations of impairment to be made under the *Guides*").

Although the current statutory scheme may warrant revision or amendment, the Division is not authorized to suggest any alternative criteria for determining impairment ratings. *Cf. Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc.*, 997 S.W.2d 651, 658 (Tex. App.—Austin 1999, pet dism'd w.o.j.) ("[T]he Commission has adopted guidelines for enforcing the Penal Code that appear contrary to the plain wording of the statute.").

The Division makes some arguments in its briefs suggesting that the advisories contemplate use of the range-of-motion model, an alternate methodology under the fourth edition of the *Guides* which permits taking surgery into account in assigning impairment ratings. However, the advisories clearly refer to the injury model, even quoting its definitions of structural inclusions.

Furthermore, the fourth edition of the *Guides* states that the injury model is the preferred methodology and that the range-of-motion model may only be resorted to in order to differentiate between two categories suggested by the injury model or if the injury in question is not covered by the injury model.  The advisories do not take either approach.  We hold that because the advisories contradict the fourth edition of the *Guides* and thus contradict labor code section 408.124 and Division rule 130.1, the trial court did not err by declaring that their issuance was invalid and that their application is an ultra vires act, and enjoining their continued use.

## CONCLUSION

Having disposed of all the Division's points of error, we affirm the judgment of the trial court.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Pemberton and Waldrop

Affirmed on Motion for Rehearing

Filed:   December 21, 2006

11