**AMERICAN HOME ASSURANCE COMPANY, Appellant,**

v.

**Susan POEHLER, Appellee.**

**No. 12–09–00293–CV.**

Court of Appeals of Texas, Tyler.

Oct. 20, 2010.

Greg D. Solcher, Robert D. Stokes, for Appellant.

Bradley D. McClellan, Frank D. Weedon, for Appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J. and HOYLE, J.

### OPINION

BRIAN HOYLE, Justice.

American Home Assurance Company has filed a motion for rehearing, which is overruled. We withdraw our opinion delivered on July 30, 2010, and substitute the following opinion in its place.

American Home Assurance Company (American Home) appeals the trial court's judgment in favor of Susan Poehler in its suit for judicial review of certain decisions by the Texas Department of Insurance, Division of Workers' Compensation (the Division). American Home raises five issues on appeal. We affirm in part, reverse and render in part, and reverse and remand in part.

### BACKGROUND

Poehler was working as a machine operator for FKI Industries when she sustained a lower back injury in the course and scope of her employment. As a result of her injury, Poehler underwent significant medical treatment, including two surgeries. Poehler sought workers' compensation benefits.

To determine the amount of Poehler's benefits, the Division assigned Dr. Phillip Williams to examine Poehler and provide an impairment rating percentage for her injury. Dr. Williams determined that Poehler reached maximum medical improvement on December 21, 2004, with a

20% impairment rating. Dr. Williams's certification of a 20% impairment rating was based upon the use of Division Advisory 2003–10.

FKI Industries had a workers' compensation insurance policy with American Home, and American Home challenged Dr. Williams's certification of Poehler's impairment rating. In a letter of clarification regarding Poehler's impairment rating, Dr. Williams stated that

[b]ased on examination and without utilizing the [Division] Advisory, her whole person impairment rating would be 5% via Table 72, DRE Category II. However, I think that it is also important to point out that if the [range of motion] model was used as a differentiator, [Poehler's] impairment would fall more closely to a 20% (DRE IV), [than] a 5% (DRE II).

The dispute regarding Poehler's impairment rating had an effect on Poehler's entitlement to supplemental income benefits because a worker with an impairment rating of less than 15% is not entitled to supplemental income benefits. Thus, American Home also challenged Poehler's entitlement to supplemental income benefits.

Several benefit contested case hearings were held regarding Poehler's impairment rating and entitlement to supplemental income benefits. At the conclusion of each of the benefit contested case hearings, the hearing officer ruled that Poehler's impairment rating is 20% and that she is entitled to supplemental income benefits for the quarter in question. American Home appealed the rulings to an appeals panel of the Division. Again, in each case, the appeals panel of the Division affirmed the hearing officer's rulings.

American Home then sought judicial review of the 20% impairment rating and award of supplemental income benefits for quarters 1, 2, 3, 5, 6, 7, and 8. The trial court consolidated all of the issues into one case, and the case proceeded to a bench trial. At the conclusion of the trial, the trial court agreed with the Division that Poehler's impairment rating is 20% and that she is entitled to supplemental income benefits for quarters 1, 2, 3, 5, 6, 7, and 8. The trial court further awarded Poehler attorney's fees. This appeal followed.

### JURISDICTION

■ In her appellate brief, Poehler questioned whether this court has jurisdiction over this dispute. Specifically, Poehler stated, [American Home] may also be burdened with a jurisdictional loss from not preserving any other valid rating than the 20% [impairment rating]. Poehler's brief does not contain a clear and concise argument with appropriate citations to authorities and to the record for her contention that subject matter jurisdiction is lacking. *See* TEX.R.APP. P. 38.1(h). Nevertheless, we address Poehler's jurisdictional argument because we must ascertain that subject matter jurisdiction exists even if the parties have not questioned it. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004).

### *Applicable Law*

■ Subject matter jurisdiction involves a court's power or authority to hear a dispute. *Tellez v. City of Socorro*, 226 S.W.3d 413, 413 (Tex.2007). Subject matter jurisdiction cannot be forfeited. *Id.* at 414. However, procedural defects made in bringing a complaint to a court can be forfeited. *Id.*

Workers' compensation benefits are the exclusive remedy of an injured worker covered by workers' compensation insurance coverage. TEX. LABOR CODE ANN. § 408.001

(Vernon 2006); *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516 (Tex.2007). At the administrative level, disputes proceed through a benefit review conference, a benefit contested case hearing, and, finally, an administrative appeal. *Morales*, 241 S.W.3d at 516. A party that has exhausted its administrative remedies may seek judicial review of the Division's decision. TEX. LABOR CODE ANN. § 410.251 (Vernon 2006).

■ The judicial review is conducted under a modified de novo review. *Morales*, 241 S.W.3d at 516. The Division's decision may be tried to either the court or a jury, with the appealing party bearing the burden of proof by a preponderance of the evidence. TEX. LABOR CODE ANN. §§ 410.303–.304 (Vernon 2006); *Morales*, 241 S.W.3d at 516. The trial is limited to issues decided by the Division appeals panel and on which judicial review is sought. TEX. LABOR CODE ANN. § 410.302 (Vernon 2006). Unless the court finds that the injured worker's condition has substantially changed, evidence of the extent of impairment is limited to that evidence presented to the Division. *Id.* §§ 410.306–.307 (Vernon 2006). Further, the factfinder in its determination of the extent of impairment shall adopt one of the impairment ratings provided to the Division. *Id.* § 410.306.

At least one of our sister courts has determined that this statutory scheme does not provide a trial court with jurisdiction to set aside a doctor's impairment rating for an injured worker when no alternative rating was presented to the jury. *Am. Zurich Ins. Co. v. Samudio*, 317 S.W.3d 336, 349 (Tex.App.-Houston [1st Dist.] 2010, no pet.). *But see DeLeon v. Royal Indem. Co.*, No. 03–08–00532–CV, 2010 WL 323128, *5, 2010 Tex.App. LEXIS 565, at *14–15 (Tex.App.-Austin Jan. 27, 2010, pet. filed) (mem.op.) (without discussing jurisdiction, finding only impairment rating invalid and dismissing case so that injured worker could pursue new impairment rating determination).

### Application

■ Here, the Division was presented with the opinion of only one doctor, but with more than one impairment rating. Dr. Williams examined Poehler and determined that her impairment rating is 20% based on Division Advisory 2003–10. In a letter of clarification, Dr. Williams stated that Poehler's impairment rating is 5% if based solely on the injury model of the Guides, utilizing Table 72, without reference to Division Advisory 2003–10. Thus, the trial court had two impairment ratings to consider and had jurisdiction over the dispute. TEX. LABOR CODE ANN. §§ 410.251, 410.306. Because the trial court properly exercised jurisdiction over the dispute, we have jurisdiction to review the trial court's final judgment.

### IMPAIRMENT RATING

In its first and second issues, American Home argues that the trial court improperly found Poehler's impairment rating to be 20%.

### Applicable Law

An injured worker covered by workers' compensation insurance receives impairment income benefits if he continues to have impairment after reaching maximum medical improvement (MMI). TEX. LABOR CODE ANN. § 408.121 (Vernon 2006). The injured worker's impairment must be based on an objective clinical or laboratory finding. *Id.* § 408.122 (Vernon 2006). After the injured worker has been certified by a doctor as reaching MMI, the certifying doctor evaluates the condition and assigns an impairment rating for the injured worker. *Id.* § 408.123 (Vernon 2006). For an impairment rating to be valid, the

impairment rating must be determined by use of the appropriate edition of the Guides to the Evaluation of Permanent Impairment. *Id.* § 408.124 (Vernon 2006). The parties agree that the fourth edition of the Guides is the appropriate edition. *See* 28 TEX. ADMIN. CODE § 130.1(c) (2004) (Tex. Dep't Ins., Div. Workers' Comp.)

The fourth edition of the Guides primarily utilizes an injury model, which relies on objectively verifiable evidence to place patients into one of eight diagnosis-related estimate (DRE) categories. *Tex. Dep't of Ins. v. Lumbermens Mut. Cas. Co.*, 212 S.W.3d 870, 872 (Tex.App.-Austin 2006, pet. denied). As pertinent to this case, the Guides require either loss of motion segment integrity or a structural inclusion for an injured worker to receive a 20% impairment rating (DRE IV) for a lumbosacral spine injury in the context of spinal fusion surgeries. *See id.* To establish the requisite loss of motion segment integrity, the Guides require that flexion and extension x-rays taken before the spinal fusion surgery demonstrate translation of at least five millimeters of one vertebra on another or angular motion at a motion segment that is eleven degrees more than at an adjacent motion segment. *Id.* at 872–73.

■ Because many doctors were performing spinal fusion surgeries without taking preoperative flexion and extension x-rays, the Division issued Advisories 2003–10 and 2003–10B. *Id.* at 873. These advisories attempted to provide an alternative standard for assessing a 20% impairment rating when there are no preoperative x-rays. *Id.* But because the advisories contradict the fourth edition of the Guides, one of our sister court has ruled the advisories are invalid. *Id.* at 876–77.

### Application

Dr. Williams's determination that Poehler's impairment rating is 20% was based on Division Advisory 2003–10. Dr. Williams did not review flexion and extension x-rays taken before Poehler's spinal fusion surgery. Instead, he was convinced that Poehler would not have had the spinal fusion surgery without loss of motion segment integrity. However, the Guides require more than Dr. Williams's belief. Without presurgery x-rays, Dr. Williams could not provide objectively verifiable evidence to place Poehler's impairment rating at 20%. Further, we agree with our sister court that Division Advisory 2003–10 cannot be considered in determining an injured worker's impairment rating. Thus, Dr. Williams's opinion of Poehler's impairment rating using Division Advisory 2003–10 is based on legally insufficient evidence and is an invalid impairment rating.

■ Poehler argues that even if Division Advisory 2003–10 cannot be used as a basis to support Poehler's 20% impairment rating, the 20% impairment rating can be justified by either the use of range of motion as a differentiator or consideration of Poehler's back surgeries as allowed by Table 70 of the Guides. We disagree.

It is uncontroverted that Dr. Williams stated in a letter of clarification to the Division that Poehler's impairment rating is 5% if based solely on the injury model of the Guides without reference to Division Advisory 2003–10, and somewhere between 5% and 20%, and closer to 20%, if range of motion is used as a differentiator. However, Dr. Williams did not provide an exact percentage of impairment for Poehler with range of motion being used as a differentiator. Further, based on the record before us, Dr. Williams never mentioned Table 70 of the Guides to the Division. Therefore, the Division was not presented with a specific percentage impairment rating based on either the use of range of motion as a differentiator or the use of Table 70 of the Guides.

Additionally, no evidence of a change in Poehler's condition was presented to the trial court. But even if such evidence had been presented, Dr. Williams's trial testimony still lacked an exact percentage of impairment for Poehler with range of motion being used as a differentiator. Finally, Dr. Williams's trial testimony failed to reference a finding regarding Poehler's proper placement in Table 70 of the Guide.

American Home established that Poehler's impairment rating of 20% was not supported by legally sufficient evidence. We sustain American Home's first and second issues.

### REMEDY

In its third issue, American Home argues that since the impairment rating determined by the trial court is invalid, the proper remedy in this case is either assessing Poehler's impairment rating as 5% based on the valid opinion of Dr. Williams, or dismissing the case so that Poehler lacks an impairment rating and can return to the Division. Poehler, during oral argument, argued that, if we get to this point, the proper remedy is dismissing the case without providing Poehler an impairment rating, so that she may return to the Division. However, we lack authority to simply dismiss the case. *See Samudio*, 317 S.W.3d at 349.

Because Dr. Williams's opinion of Poehler's impairment rating based on Division Advisory 2003–10 is invalid, the Division was presented with only one valid impairment rating, the 5% impairment rating based on Table 72. Thus, Poehler's impairment rating is 5%. *See Bell v. Zurich Am. Ins. Co.*, 311 S.W.3d 507, 511–12 (Tex. App.-Dallas 2009, pet. filed). We sustain that portion of American Home's third issue requesting a determination that Poehler's impairment rating is 5%. We overrule the remainder of its third issue.

### SUPPLEMENTAL INCOME BENEFITS

In its fourth issue, American Home argues that the trial court improperly found Poehler entitled to supplemental income benefits for quarters 1, 2, 3, 5, 6, 7, and 8.

### *Applicable Law*

If other requirements are met, an injured worker with an impairment rating of 15% or more is entitled to supplemental income benefits. TEX. LABOR CODE ANN. § 408.142 (Vernon 2006). When seeking judicial review of the Division's decision, the appealing party bears the burden of proof by a preponderance of the evidence. *Id.* § 410.303; *Morales*, 241 S.W.3d at 516. The trial court is limited to issues decided by the Division appeals panel and on which judicial review is sought. TEX. LABOR CODE ANN. § 410.302.

When findings of fact are filed by the trial court, the findings form the basis of the judgment upon all grounds of recovery and of defense embraced in the findings. TEX.R. CIV. P. 299. On appeal, the judgment may not be supported by a presumed finding of any ground of recovery or defense if no element of that ground has been included in the findings. *Id.* All grounds of recovery or defense upon which no finding is made or requested are forfeited. *Traweek v. Larkin*, 708 S.W.2d 942, 947 (Tex.App.-Tyler 1986, writ ref'd n.r.e.).

### *Application*

Because we have determined that Poehler's impairment rating is not 15% or more, Poehler is not entitled to supplemental income benefits under section 408.142. However, Poehler argues that she is entitled to supplemental income benefits under the doctrine of procedural default. At the beginning of the trial, Poehler stated that the supplemental income benefits for quarter 1 could be disposed of

on the basis of default. This assertion is supported by the fact that American Home sought judicial review, as to quarter 1, of the Division's decision that [American Home] waived the right to contest the claimant's entitlement to supplemental income benefits by failing to timely request a benefit review conference.

Because American Home was the party seeking judicial review of this decision, American Home had the burden of proof on the issue. TEX. LABOR CODE ANN. § 410.303. But American Home presented no evidence and sought no findings to support its position that it did not forfeit the right to contest supplemental income benefits for quarter 1. To avoid the Division's decision that Poehler is entitled to supplemental income benefits for quarter 1, American Home had to establish that it did not waive the right to contest Poehler's entitlement to supplemental income benefits for this quarter. Thus, based on the default, the trial court's judgment that Poehler is entitled to supplemental income benefits for quarter 1 is correct.

Regarding supplemental income benefits for quarters 2, 3, 5, 6, 7, and 8, the Division did not find default. Obviously then, American Home did not seek judicial review of a decision of the Division as to default for those quarters. To prevail on a theory of default as to those quarters, Poehler, not American Home, had the burden of proof. But Poehler presented no evidence and sought no findings to support her position that American Home defaulted the right to contest supplemental income benefits for quarters 2, 3, 5, 6, 7, and 8. Therefore, Poehler cannot rely on proce-dural default principles as to quarters 2, 3, 5, 6, 7, and 8.

We overrule American Home's fourth issue as to supplemental income benefits for quarter 1. We sustain American Home's fourth issue as to supplemental income benefits for quarters 2, 3, 5, 6, 7, and 8.[1]

### ATTORNEY'S FEES

In its fifth issue, American Home argues that the trial court improperly awarded Poehler attorney's fees and improperly denied American Home's request for a jury trial on the issue of attorney's fees.

### Applicable Law

When a worker's compensation insurance carrier seeks judicial review of the Division's decision regarding compensability or benefits, the carrier is liable for reasonable and necessary attorney's fees incurred by the claimant if the claimant prevails on the issue. *Id.* § 408.221(c) (Vernon 2006). When the carrier seeks judicial review of multiple issues and the injured worker prevails on some, but not all, of those issues, the trial court must apportion and award fees to the injured worker's attorney only for the issues on which the injured worker prevails. *Id.; Tex. Mut. Ins. Co. v. Boetsch,* 307 S.W.3d 874, 882 (Tex.App.-Dallas 2010, pet. filed). In approving attorney's fees, the court must consider the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the legal services properly, the fee customarily charged in the locality for similar legal services, the amount involved in the controversy, the benefits to the claimant that

---

1. Poehler's brief contains occasional statements indicating that a default as to quarter 1 results in a lack of jurisdiction to review the 20% impairment rating and quarters 2, 3, 5, 6, 7, and 8. However, each of the other quarters in question was contested by American Home before the Division. Further, because the Division had not previously resolved any quarter based upon this argument, it was Poehler's burden to prove the issue existed. Poehler failed to do so in the trial court.

the attorney is responsible for securing, and the experience and ability of the attorney performing the services. TEX. LABOR CODE ANN. § 408.221(d) (Vernon 2006).

 Although the framework of the statute requires the trial court to consider several factual issues, the carrier still is entitled to a jury determination of the reasonableness and necessity of the claimant's attorney's fees where attorney's fees are disputed. *Transcontinental Ins. Co. v. Crump,* —— S.W.3d ——, —— (Tex.2010). The trial court then considers the jury's determination of the amount of reasonable and necessary fees in approving fees pursuant to subsection (d). *Id.*

### Application

Based on our determination that Poehler's impairment rating of 20% is invalid, and that Poehler is not entitled to supplemental income benefits for quarters 2, 3, 5, 6, 7, and 8, American Home did not lose all issues on which it sought judicial review. When the trial court assessed attorney's fees against American Home, it had determined that American Home was unsuccessful on all issues on which it sought judicial review. Thus, we agree with American Home that the trial court's award of attorney's fees to Poehler is incorrect.

Because American Home was not successful on all of its issues, Poehler is entitled to some amount of attorney's fees.

However, American Home is also entitled to a jury issue on the amount of attorney's fees. *Id.* Therefore, we sustain American Home's fifth issue, and remand the attorney's fees issue to the trial court. The reasonableness and necessity of Poehler's attorney's fees will be decided by a jury, and the trial court will then consider the jury's determination in deciding the amount of attorney's fees to approve pursuant to subsection (d).

### DISPOSITION

As to quarter 1 of Poehler's supplemental income benefits, we *affirm* the judgment of the trial court. As to Poehler's impairment rating, we *reverse* the judgment of the trial court and *render* judgment that Poehler's impairment rating is 5%. As to quarters 2, 3, 5, 6, 7, and 8 of Poehler's supplemental income benefits, we *reverse* the judgment of the trial court and *render* judgment that Poehler is not entitled to supplemental income benefits for quarters 2, 3, 5, 6, 7, and 8. As to the trial court's award of attorney's fees to Poehler, we *reverse* the judgment of the trial court and *remand* for further proceedings consistent with this opinion.